UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

M.A.C.C.,

Petitioner,

v.

JULIO HERNANDEZ ET AL.,

Respondents.

Case No. C26-1550-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

Petitioner M.A.C.C. is currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington.[1]  Proceeding through counsel, Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 seeking immediate release from custody, declaratory relief, the return of his personal property, and fees and costs.  Dkt. 1.  Petitioner and his counsel filed declarations and exhibits in support of the petition.  Dkts. 2-3.  Respondents filed a return to the petition, Dkt. 14, together with supporting declarations and exhibits, Dkts. 15-16.  Petitioner filed a reply in which he requests oral argument.  Dkt. 17.

---

[1] The Court granted Petitioner leave to proceed under his true initials.  *See* Dkt. 13.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

The Court, having reviewed the parties' submissions and the governing law, finds no need for oral argument, GRANTS the petition in part, and ORDERS that Petitioner be released from immigration detention within twenty-four hours.  Remaining requests for relief are addressed below.

I.      BACKGROUND

Petitioner is a citizen of Mexico who entered the United States without inspection in or around March 2022.  Dkt. 2, ¶¶2, 4.  Petitioner had unsuccessfully attempted to enter the United States on five prior occasions, between November 2020 and February 2022, but was in each instance expelled under Title 42, a public health policy in effect during the COVID-19 pandemic.  *Id*., ¶4; Dkt. 16, ¶4.  Petitioner fled Mexico because his partner's family has been targeted by a violent cartel.  Dkt. 2, ¶¶3-5.

Petitioner is the father of three children, two of whom live with their mother and his partner of over a decade in Beaverton, Oregon.  *Id*., ¶2  His partner and their children are seeking asylum in the United States due to physical and psychological threats from the Mexican cartel.  *Id*.  Before he was detained, Petitioner lived with his partner and children in an apartment in Beaverton for about a year and a half, and, for some three years, supported his family and held steady employment at a local restaurant.  *Id*., ¶6.  He has no criminal history.  *Id*., ¶7.

On the morning of November 29, 2025, two ICE agents stopped Petitioner while he was driving to work.  *Id*., ¶8.  He was lawfully obeying all traffic laws at the time he was stopped.  *Id*.  The ICE agents did not present Petitioner with a warrant or explain the reason for the stop, and asked only whether he had been born in the United States and possessed any employment authorization.  *Id*., ¶9.  The ICE agents ordered him out of the car and placed him in handcuffs, and he complied with all instructions and did not resist arrest or attempt to flee.  *Id*.  After being

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

processed at the Portland ICE office, he was transported to the NWIPC, where he has been detained since. *Id*., ¶¶10-11.

Petitioner applied for asylum while in detention and, in a hearing on April 2, 2026, the Tacoma Immigration Court denied his applications for asylum and related relief, and ordered Petitioner removed to Mexico. *Id*., ¶12; Dkt. 16, ¶11. Petitioner timely filed an appeal with the Board of Immigration Appeals (BIA), and that appeal remains pending. Dkt. 16, ¶11. *See also* Dkt. 3, Ex. 6.

Petitioner also filed a habeas petition in this Court. *See M.A.C.C. v. Hernandez*, C26-0958-TMC, Dkt. 1 (W.D. Wash. March 20, 2026). On April 20, 2026, the Court granted the petition, finding Petitioner was entitled to a bond hearing under 8 U.S.C. § 1226(a) as a member of the Bond Denial Class certified in *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025). *Id*., Dkt. 12. The Court ordered Respondents to either release Petitioner or provide him with a bond hearing under 8 U.S.C. § 1226(a). *Id*.

On April 27, 2026, an Immigration Judge (IJ) conducted a bond hearing. Dkt. 3, ¶2 & Ex. 8. At the hearing, Petitioner's counsel submitted a memorandum of law and over 100 pages of supporting evidence, which was accepted into the record. *Id*., ¶3 & Exs. 1-3. In addition to the above-described evidence of Petitioner's family, residence, steady employment, and absence of any criminal history, counsel submitted multiple character references which included, *inter alia*, assurances that Petitioner's job, housing with a relative, and financial and other assistance from a United States citizen sponsor awaited him upon his release, descriptions of his active involvement with his children's education at a public school, and documentation of financial resources. *See id*., Ex. 2. The evidence also showed that Petitioner's partner and children are currently in non-detained proceedings before the Portland Immigration Court, with a preliminary

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

hearing scheduled for July 25, 2028, and that Petitioner's BIA appeal remains pending. *See id.* Respondents submitted a Form I-213, which was also accepted into the record. *See id.*, ¶6 & Ex. 3.

The bond hearing was completed in approximately fifteen minutes and was not recorded or transcribed. *See id.*, ¶¶5, 7. At the conclusion of the hearing, the IJ issued an oral ruling and a checkbox order denying bond, finding Petitioner failed to demonstrate he was not a flight risk, denying conditional release, and indicating ability to pay was considered. *Id.*, ¶16 & Ex. 4. Petitioner reserved appeal, *see id.*, and subsequently filed an administrative appeal, which was accepted by the BIA, *see id.*, ¶21 & Ex. 5.

Petitioner filed the current petition challenging the adequacy of the bond hearing on May 6, 2026. Dkt. 1. He asserts the futility of awaiting the outcome of the administrative appeal and irreparable harm from his detention, including the displacement of his family from their apartment due to the loss of his income and impacts on his children's wellbeing, including symptoms of depression in his youngest, six-year-old child. Dkt. 2, ¶13; Dkt. 3, Ex. 2 at 22, 50.

In opposition to the petition, Respondents provide a declaration from Department of Homeland Security (DHS) officer Stanley Rili attesting that he determined Petitioner's voluntary statements, biographical information of his identity, and immigration records, including prior Title 42 expulsions, demonstrated a sufficient likelihood of flight so as to justify the issuance of a warrant for his arrest, as well as the November 29, 2025, arrest warrant, signed by Rili and pointing to biometric confirmation of Petitioner's identity, a records check, and/or voluntary statements as providing probable cause to arrest. Dkt. 15, Ex. C; Dkt. 16, ¶6. Respondents also provide a memorandum from the IJ who conducted the bond hearing. Dkt. 15, ¶3, Ex. B. The memorandum, dated May 14, 2026, finds Petitioner a "very poor bail risk[]" given his limited

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

opportunities for relief from removal, unauthorized employment in the United States, failure to consistently file income tax returns, use of a false identity to work, five prior "illegal entries," and lack of family ties to persons with status in this country. *See id*. at 4. The IJ concluded that Petitioner failed to show he is not a flight risk and that no amount of bail or condition of parole would suffice to mitigate the risk of flight. *See id*.

## II.     LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). Habeas petitioners must prove by the preponderance of the evidence that they are entitled to habeas relief. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004) (citation omitted). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," 28 U.S.C. § 2243.

## III.     ANALYSIS

Petitioner raises three claims. First, he alleges Respondents violated his Fifth Amendment right to procedural due process by failing to conduct an individualized custody determination and provide him an opportunity to be heard prior to his detention. Dkt. 1 at 23-24. Second, he alleges Respondents violated that same right by failing to conduct a constitutionally adequate custody determination in his bond hearing. *Id*. at 25-28. Third, Petitioner alleges the defects in the bond proceedings independently violate the Immigration and Nationality Act (INA). *Id*. at 28-31. He also asserts that he should not be required to exhaust administrative remedies before seeking federal habeas relief. *Id*. at 21-23. Respondents argue that the Court

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

should require Petitioner to exhaust his administrative remedy before the BIA, and deny that he has identified any constitutional or legal errors that would entitle him to release. *See* Dkt. 14.

Respondents do not dispute either the statutory basis for Petitioner's detention under 8 U.S.C. § 1226(a), or this Court's jurisdiction to review the IJ's denial of bond for abuse of discretion. *See id*. at 1-2, 8-14. The Court finds that, because the petition challenges the constitutionality of the bond hearing, the Court has subject matter jurisdiction over Petitioner's claims. *See Martinez v. Clark*, 124 F.4th 775, 784-85 (9th Cir. 2024). The Court also, as discussed below, waives the exhaustion requirement and finds that the IJ abused his discretion and violated Petitioner's due process rights in denying bond. The Court, having found as such, declines to address Petitioner's remaining claims for relief.

A.    Prudential Exhaustion

The exhaustion of administrative remedies by perfecting a BIA appeal is a prudential, rather than a jurisdictional, requirement. *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017). A court may require prudential exhaustion where: (1) agency expertise is necessary to build a proper record; (2) waiving the requirement would encourage bypassing the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes, obviating the need for judicial intervention. *Id*. (citing *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007)). If a court determines that an immigration detainee has failed to exhaust administrative remedies as a prudential matter, it should either dismiss the matter without prejudice or stay the case to permit exhaustion. *Id*. However, even if these factors weigh in favor of prudential exhaustion, the Court may waive the requirement if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id*.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

(quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).  "The party moving the court to waive prudential exhaustion requirements bears the burden of demonstrating that at least one of these *Laing* factors applies."  *Aden v. Nielsen*, C18-1441-RSL, 2019 WL 5802013, at *2 (W.D. Wash. Nov. 7, 2019) (citations omitted).

Here, with respect to the first factor, Petitioner "raises a constitutional challenge to the adequacy of his bond hearing, which is better suited to review by the federal courts."  *W.T.M. v. Bondi*, No. C25-2428-RAJ-BAT, 2026 WL 262583, at *2 (W.D. Wash. Jan. 30, 2026) (citing *Scott v. Wamsley*, No. C25-1819-TMC, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026)).  The first *Puga* factor therefore weighs against requiring prudential exhaustion.

With respect to the second factor, relaxation of prudential exhaustion could, to some extent, encourage others to bypass the administrative appellate procedures.  At the same time, consideration of the challenges raised by Petitioner could "be beneficial to provide the specific immigration court, which regularly handles bond hearings, with guidance on the types of circumstances that may lead to a finding of constitutional deficiency."  *Lima Soriano v. Hernandez*, No. C26-0900-DGE, 2026 WL 969764, at *4 (W.D. Wash. Apr. 10, 2026).  Accordingly, this factor weighs neutral.  *See id.*

As to the third factor, where, as here, the alleged defects are constitutional in nature, the Court finds no reason to delay review in favor of a BIA appeal.  *See id*.  *See also W.T.M.*, 2026 WL 262583, at *3 ("Here, the defect alleged by Petitioner is constitutional in nature, and it is unlikely that appeal to the BIA will permit the agency to correct a factual or evidentiary oversight by the IJ.").  This factor thus weighs against requiring prudential exhaustion.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 7

Moreover, even if the above factors weighed in favor of requiring exhaustion, the Court finds waiver appropriate under *Laing* given Petitioner's showing as to the inadequacy of administrative remedies and irreparable injury.  *See* Dkts. 1-3, 17.  Respondents deny that the mere passage of time, delay inherent in the administrative process, the mere fact of Petitioner's detention, or his personal circumstances suffice to establish the type of unique irreparable harm necessary to waive prudential exhaustion.  However, as Petitioner asserts and courts in this District have repeatedly found, the pursuit of administrative remedies would involve unreasonable delay.  *See, e.g., Segura Serrano v. Scott*, No. C26-1268-LK, 2026 WL 1469639, at *3 (W.D. Wash. May 26, 2026) (noting evidence of the BIA's "'unprecedented'" caseload after it was reduced in size by nearly one half in early 2025, data from 2024 showing BIA decisions take over six months, and that "data in 2025 indicates that the delay has exponentially worsened.") (cited sources omitted); *W.T.M.*, 2026 WL 262583, at *3 (noting data released by the Executive Office for Immigration Review reflecting that the average processing time for bond appeals in 2024 exceeded 200 days and that "[d]istrict courts in this Circuit 'routinely' waive prudential exhaustion requirements for noncitizens facing prolonged detention while awaiting administrative appeals.") (citing *Rodriguez*, 779 F. Supp. 3d at 1248-49, 1253-54).  There is, moreover, no dispute that Petitioner "has dependents who rely upon him financially and emotionally, and that relationship is severely negatively impacted by his continued detention." *Lima Soriano*, 2026 WL 969764, at *4.  *See also Loya Medina v. Hernandez*, No. C26-0772-GJL, 2026 WL 1260848, at *6 (W.D. Wash. May 7, 2026) (finding "Petitioner's uncontested factual submissions are sufficient to show irreparable harm and warrant waiver of the exhaustion requirement.").  The Court, for these reasons, declines to require petitioner to exhaust his administrative remedies prior to pursuing this action.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 8

B.      Abuse of Discretion Review

In making a bond decision under § 1226(a), an immigration judge must consider whether the detainee is "a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk." *In re Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006) (citing *Matter of Patel*, 15 I. & N. Dec. 666 (B.I.A. 1976)).  An immigration judge may also consider any number of discretionary factors, including:  (1) whether the detainee has a fixed address in the United States; (2) the detainee's length of residence in the United States; (3) the detainee's family ties in the United States, and whether they may entitle the detainee to reside permanently in the United States in the future; (4) the detainee's employment history; (5) the detainee's record of appearance in court; (6) the detainee's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the detainee's history of immigration violations; (8) any attempts by the detainee to flee persecution or otherwise escape authorities; and (9) the detainee's manner of entry to the United States. *See id*.

The Court reviews IJ bond determinations for abuse of discretion.  *See Martinez*, 124 F.4th at 779-80.  Specifically, while factual questions raised in an application for discretionary relief are unreviewable, a district court may review a habeas challenge to an IJ's application of a legal standard – such as dangerousness or risk of flight—to determine "whether an IJ correctly applied the [legal] standard to a given set of facts." *Id*. at 782 (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)).  That is, while the Court does not properly review "underlying factual determinations" such as "credibility, the seriousness of a family member's medical condition, or the level of financial support a noncitizen currently provides[,]" it may review for an abuse of discretion pure legal questions or mixed questions of law and fact, "even when [the latter] are

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

primarily factual[.]" *Id*. at 782-84 (quoting *Wilkinson*, 601 U.S. at 225).  Under abuse of discretion review, the Court "cannot reweigh evidence," but instead determines whether the immigration judge "applied the correct legal standard."  *Id*. at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

The IJ here described the evidence submitted by both parties, stated Petitioner "has some limited equities in the United States, including his friends, employers, and his partner and her 2 children[,]" and found that, "[g]iven his limited opportunities for relief from removal, his unauthorized employment in the United States, his failure to consistently file income tax returns, his use of a false identity to work, his 5 prior illegal entries, and his lack of family ties to persons with status in this country," Petitioner "is a very poor bail risk." Dkt. 15, Ex. B at 2-4.[2]  The IJ, for these reasons, did "not find that [Petitioner] has shown that he is not a flight risk[,]" and found that "no amount of bail or condition of parole would be sufficient to mitigate the risk of flight in this case."  *Id*. at 4.

The IJ's determination that Petitioner presents a flight risk presents a mixed question of fact and law reviewable in habeas for an abuse of discretion.  "Given the significant liberty interest at stake for noncitizens in immigration detention and the weak or nonexistent governmental interest in continued detention without adequate process, courts in this and other

---

[2] Amongst other arguments, Petitioner asserts that the IJ failed to record or offer any contemporaneous reasoned explanation of his decision at hearing and that the Court therefore may not lawfully take the IJ's "post-hoc" memorandum into consideration. *See* Dkt. 17 at 14-15 (invoking *SEC v. Chenery Corp.*, 318 U.S. 80 87, 94 (1943)).  However, the declaration from Petitioner's counsel appears to suggest that the IJ offered at least some reasoning at hearing. *See, e.g.*, Dkt. 3, ¶¶13-14 (indicating the IJ stated he disagreed with arguments that Petitioner's Title 42 encounters should not be weighed against him, that "working without authorization demonstrates a disregard for legal obligations, which indicates a likelihood of absconding[,]" and that Petitioner had failed to demonstrate he was not a flight risk).  The Court therefore declines to presume that the IJ failed to articulate any basis for his decision at hearing or to conclude that the Court is precluded from considering the IJ's written memorandum. *See Loya Medina*, 2026 WL 1260848, at *3 n.5 (finding same).

districts have found due process violations where IJs abuse discretion in bond determinations." *Gimenez v. Hernandez*, C26-0966-GJL, 2026 WL 1156075, at *6 (W.D. Wash. Apr. 29, 2026) (collecting cases). The burden of proof and who bears it appears to be an unresolved issue in the Ninth Circuit. *See Segura Serrano*, 2026 WL 1469639 at *7 (discussing conflicting circuit case law and an absence of clear authority in the Ninth Circuit).[3] However, assuming that Petitioner bears the burden of proof by a preponderance of the evidence, the Court here finds that the IJ abused his discretion and therefore violated Petitioner's right to due process.

First, the IJ did not explain the purported link between Petitioner's limited opportunities for relief from removal and flight risk. An IJ may consider the likelihood that relief from removal will be granted in determining flight risk because a noncitizen "with a greater likelihood of being granted relief from deportation has a greater motivation to appear for a deportation hearing than one who, based on a criminal record or otherwise, has less potential of being granted such relief." *Matter of Andrade*, 19 I. & N. Dec. 488, 490 (BIA 1987); *accord Matter of R-A-V-P-*, 27 I. & N. Dec. 803, 805 (BIA 2020). However, the mere fact of a removal order or the lack of other potential forms of relief do not suffice to establish flight risk. *See, e.g.*, *Segura Serrano*, 2026 WL 1469639, at *7; *Tavurov v. Noem*, No. C26-0668-TLF, 2026 WL 1283513, at *7 (W.D. Wash. May 11, 2026) (citing *Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011)). The IJ here noted that Petitioner's asylum application had been denied, that he had been ordered removed, and stated that the outcome of his pending appeal was "speculative at this point." Dkt. 15, Ex. B at 4. He acknowledged Petitioner's equities in the United States, including his friends, employer, long-term partner, and two young children, but concluded, with no further explanation, that the fact that the outcome of his appeal is unknown supported the finding that he

---

[3] The parties here dispute, but provide no substantive discussion as to who bears the burden of proof. *See* Dkt. 1 at 7 n.1 & Dkt. 14 at 2 & n.2.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

was "a very poor bail risk."  Dkt. 15, Ex. B at 3-4.  The IJ, in so doing, identified no facts and offered no explanation as to how the "relative strengths or weaknesses of Petitioner's claims for relief outweighed the specific circumstances" that weighed against finding Petitioner to be at risk of failing to appear for future court proceedings.  *Lima Soriano*, 2026 WL 969764, at \*5.  *See also N.A. v. Warden, Adelanto Det. Facility*, No. C25-3007, 2026 WL 1045196, at \*8 (C.D. Cal. Apr. 15, 2026) ("[A]ll unresolved claims for immigration relief are, by definition, 'speculative,' but that does not mean a noncitizen cannot be trusted to appear for future court proceedings on that basis alone.").

Second, the IJ did not explain how Petitioner's unauthorized employment in the United States, failure to consistently file income tax returns, and use of a false identity to work weighed in favor of finding flight risk.  By declaration, counsel for Petitioner asserts that the IJ stated at hearing that "working without authorization demonstrates a disregard for legal obligations, which indicates a likelihood of absconding."  Dkt. 3, ¶14.  There is, however, no evidence Petitioner used "'false identities', i.e., false Social Security numbers, for reasons other than to maintain employment[.]"  *Lima Soriano*, 2026 WL 969764, at \*5.  *See, e.g.,* Dkt. 3, Ex. 3 at 4 (Form I-213 showing that, at the time he was pulled over by ICE agents, Petitioner identified himself by his correct name and admitted to being a citizen of Mexico and not in possession of documents allowing him to be legally present in the United States).  "Moreover, a noncitizen without any employment history is a factor that militates against release on bond because it would indicate the noncitizen is less likely to appear for removal proceedings."  *Lima Soriano*, 2026 WL 969764, at \*5 (citing *Matter of R-A-V-P-*, 27 I. & N. Dec. at 805).  Petitioner, by contrast, has a steady employment history and a job awaiting him upon his release.  Nor is it

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

apparent why a failure to consistently file income tax returns bears a rational relationship to the IJ's finding that Petitioner is a very poor bail risk.

Third, the IJ linked Petitioner's five prior "illegal entries," in which he was expelled, to flight risk, without providing any explanation as to why he believed those expulsions showed Petitioner would be motivated to flee or not appear at future immigration proceedings. *See* Dkt. 5, Ex. B at 3-4. In suggesting an explanation, Respondents assert that these expulsions reflect a "clear pattern of disregard for immigration laws," upon which the IJ "may reasonably infer a general disregard for immigration authority and conclude that Petitioner is unlikely to comply with immigration court mandates, bond conditions, or removal orders." Dkt. 14 at 15. However, as Petitioner observes, the expulsions occurred under Title 42, which governs public health and welfare, not the INA. Nor is it clear Petitioner was on any of those occasions found to have, in fact, illegally entered the United States. The record, at most, shows that Petitioner attempted to enter the United States during the COVID-19 pandemic and was expelled at the border under Title 42 on each occasion. *See* Dkt. 16, ¶4 ("United States Border Patrol encountered Petitioner at the U.S. Mexico border and expelled him from the United States each time under Title 42."). *See also* Dkt. 15, Ex. B at 2 (stating that the Government's evidence indicated Petitioner "first began trying to enter the United States in November of 2020[,]" and thereafter "attempted to enter" on another four occasions between December 2020 and February 2022).

Nor, to the extent also considered, *see* Dkt. 15, Ex. B at 3 (noting Petitioner's "last illegal entry"), does the IJ explain why Petitioner's unauthorized entry into the United States in or around March 2022 would support a flight-risk finding. The record showed that, prior to his detention, Petitioner lived continuously, and held steady employment, in Oregon for some three years, resided at a fixed address with his partner and two children who were financially

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 13

dependent upon him, had extensive ties to his local community and was actively involved in the education of his young children, had no criminal history, and had a job, housing with a relative, and financial and other assistance from a United States citizen sponsor awaiting him upon his release. *See* Dkt. 3, Ex. 2.  Consideration of his single unauthorized entry would not, under these circumstances, rationally support a flight-risk finding.  *See, e.g., Lima Soriano*, 2026 WL 969764, at *5 ("The IJ provides no explanation why an unauthorized reentry into the United States 25 years ago would motivate Petitioner to uproot his family from his community (or abandon his family) to avoid immigration officials and flee.  Concluding that an unlawful entry from 25 years ago, without any criminal history or any history of failing to appear, automatically weighs in favor of finding flight risk lacks any objective rationale.").  It would also "suggest[] that *any* individual who entered the country illegally could be considered a flight risk and denied bond on that ground," which "would effectively transform discretionary detention into de facto mandatory detention." *Segura Serrano*, 2026 WL 1469639, at *7 (citing *Rosales v. Simon*, C26-0086, 2026 WL 688858, at *5 (E.D. Va. Mar. 11, 2026) ("[A]n individual's bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases.")).

Fourth, and finally, the IJ pointed to Petitioner's lack of family ties to persons with legal status in the United States.  He observed that Petitioner's long-term partner and children lack lawful immigration status, that he has no family in the United States with that status, and that he had only resided in the United States for about four years. *See* Dkt. 15, Ex. B at 3-4.  However, the record before the IJ included a declaration from a United States citizen sponsor providing assurance of financial and other support for Petitioner upon his release, and evidence that his long-time partner and children have a pending application for asylum and a preliminary hearing

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14

date.  *See* Dkt. 3, Ex. 2 at  43, 105.  It also included assurances from Petitioner's employer and a family member that Petitioner would have a job and housing upon his release, and other evidence documenting his extensive ties to family, friends, co-workers, and educators in his local community.  *See id*. at 18, 22-23, 30, 46, 48, 50, 52, 55, 61, 64.  The IJ did not explain why the fact that Petitioner does not currently have any family member with status as a United States citizen outweighed the evidence of his fixed, stable, and supported status in his family and community.  Further, the IJ's failure to explain why he discounted factors suggesting Petitioner was not a flight risk leaves the Court to speculate how that evidence was viewed in light of the applicable factors, and to conclude that the IJ "'failed to do so, which constitutes an abuse of discretion.'"  *Segura Serrano*, 2026 WL 1469639, at *8 (quoting *Vasquez Lopez v. Hernandez*, No. C26-0775-TSZ, 2026 WL 984151, at *3 (W.D. Wash. Apr. 13, 2026)).

In sum, the IJ relied on factors that do not independently support a flight-risk finding, failed to provide a rationale for his finding that Petitioner posed a flight risk, and failed to engage with the factors weighing against that finding.  This Court and other district courts have considered these and similar circumstances in finding an abuse of discretion.  *See e.g., id.* at *7-9 ("In, sum, the IJ failed to provide rationale for her findings of flight risk and dangerousness and failed to engage whatsoever with the factors weighing against such findings."); *Loya Medina*, 2026 WL 1260848, at *7-8 (finding IJ relied on factors that did not alone suffice to support a flight-risk finding and failed to explain how isolated conduct at the time of petitioner's arrest demonstrated flight risk); *Perez Velasquez v. Bondi*, No. C26-1759, 2026 WL 1042479, at *6-7 (S.D. Cal. Apr. 16, 2026) (IJ did not "consider or apply" the required *Guerra* factors and "failed to consider all relevant evidence as required by due process"); *Vasquez Lopez*, 2026 WL 984151, at *3 (finding insufficient explanation for whether and how IJ considered the required factors and

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 15

weighed evidence); *Lima Soriano*, 2026 WL 969764, at *4-6 (IJ abused his discretion by failing to explain why identified factors "established flight risk or how they outweighed the significant evidence showing Petitioner is fixed and stable with his family in his community."). The Court here similarly concludes the IJ failed to correctly apply the legal standard to the facts, abused his discretion, and violated Petitioner's rights under the Fifth Amendment.[4]

C.      Remedy

Petitioner requests immediate release from custody, while Respondents are silent as to the appropriate remedy. *See* Dkt. 14 at 17 & Dkt. 17 at 31. Courts in this District have, under similar facts and circumstances, found no basis for continuing to detain petitioners and ordered their immediate release. *See, e.g., Segura Serrano*, 2026 WL 1469639, at *9; *Loya Medina*, 2026 WL 1260848, at *8-9; *Lima Soriano*, 2026 WL 969764, at *6. *See also Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release.") (internal and other citations omitted). The Court here similarly finds no basis for Petitioner's continued detention and his immediate release with reasonable conditions of supervision to be the appropriate remedy.

IV.      CONCLUSION

Based on the foregoing, the Court ORDERS:

(1)      Petitioner's petition for writ of habeas corpus, Dkt. 1, is GRANTED in part.

(2)      Respondents shall RELEASE Petitioner from custody **within 24 hours** of the issuance of this Order with reasonable conditions of supervision.

---

[4] The Court, having found as such, declines to address the parties' arguments as to whether the IJ also abused his discretion in failing to consider what combination of bond and conditions would sufficiently mitigate any perceived flight risk. *See, e.g.*, Dkt. 14 at 16-17; Dkt. 17 at 26-28.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 16

(3)     Respondents shall file a notice with the Court confirming Petitioner's release **within 48 hours**.

(4)     Petitioner's request for declaratory relief is DENIED given the other, sufficient relief provided herein.

(5)     Petitioner's request for the return of his property upon his release is DENIED given the absence of any accompanying factual support or argument that would provide a basis upon which the Court could conclude Respondents would seek to impermissibly retain Petitioner's property.

(6)     The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition.  Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 4th day of June, 2026.

_____
S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 17